MONTGOMERY COUNTY BOARD OF EDUCATION et al., Plaintiffs,

v.

Ernest SHELTON, Tenna Allen, also known as Selestine Seals, and all other persons acting in concert with them, Defendants.

No. WC 7114.

United States District Court,
N. D. Mississippi, W. D.
May 17, 1971.

John M. Summer, Donald Bond, Winona, Miss., for plaintiffs.

Michael McGough, Greenwood, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This case is before the court on motions by defendants, black students of Kilmichael High School and their parents, for a temporary restraining order and preliminary injunction against the enforcement by plaintiffs, the Mayor and Aldermen of the Town of Kilmichael, of an ex parte temporary injunction issued by the Chancery Court of Montgomery County, Mississippi, forbidding defendant students from picketing, marching or otherwise engaging in protest demonstrations in the Town of Kilmichael except under the terms and conditions specified in the Chancellor's decree. Following evidentiary hearing and submission of briefs, the case is now before the court for decision on defendants' motions.

The initial link in the chain of events leading to the present controversy was the filing of suit by the United States in 1967 seeking to desegregate the public schools of Montgomery County, Mississippi. Since then this court has had continuing jurisdiction of the school case and has entered numerous orders affecting nearly every aspect of school operation; the present total desegregation plan was placed in effect by order of June 8, 1970, which combined zoning and pairing principles.[1]

Following a relatively quiet fall semester under the new desegregation plan, disturbances erupted during February and March of 1971, which moved the school board to seek relief from this court by filing an original suit for an injunction (Cause No. WC 7114-K) against marches, demonstrations and other protest activities by certain students during school hours on the public road fronting Kilmichael High School. On March 9, following an evidentiary hearing, the court entered a temporary restraining order granting the relief

[1]. U. S. v. Montgomery County Board of Education, WC 6720-K; Walter Doris v. Montgomery County Bd. of Education, WC 701-K.

requested by the school board, but adding the following proviso:

"This temporary restraining order does not prevent defendants from conducting peaceful protest activities at any public place in Montgomery County, Mississippi, except as hereinabove limited, upon the understanding, however, that such activities shall on no occasion be carried on near any public school during school hours."

No further complaints of demonstrations near school buildings or disruption of classes have been brought to the court's attention since entry of the March 9 order.

After being enjoined by this court from airing their grievances near school buildings and being encouraged by the court to transfer legitimate protest activities elsewhere, defendant students began marching and demonstrating in the Town of Kilmichael away from school grounds. On March 15 the Mayor and Board of Aldermen of the town filed a bill of complaint in the Chancery Court of Montgomery County (#9485), alleging that certain named students and others acting in concert with them were blocking sidewalks and denying citizens of the town free access to public buildings and places of business in violation of § 2318.5 of the Mississippi Code.[2] The chancery complaint further alleged that on many occasions the students sang, chanted and clapped their hands while marching in the area adjacent to Kil-

michael Hospital located on Lamar Street downtown, thereby disrupting operation of the hospital and creating tension and apprehension in its patients.

The Chancellor immediately issued, without notice to defendant students or their counsel, his decree ordering a temporary injunction (a copy of which is attached to this opinion as Exhibit "A") prohibiting the students from engaging in any protest activities in Kilmichael except under very specific and strict guidelines as to place and manner of marching set out in the decree; all demonstrations within 100 yards of the hospital were expressly forbidden. The parties agree that the terms of the decree are taken almost verbatim from an earlier order of this court in Cause No. WC 6630, which was later disapproved by this court when adopted by a municipality in the form of a special ordinance as constituting a prior restraint on free speech in violation of the First Amendment.[3] Nothing in the Chancellor's decree, which was entered in vacation term, indicated the duration of the state injunction. To date no motion to dissolve the temporary injunction has been filed by defendant students, nor has hearing on a permanent injunction been set. The next regular term of the Montgomery County Chancery Court begins on Monday, June 14, 1971.

On March 16, the day following entry of the Chancellor's injunction, defendant students filed motions in this court

---

2. § 2318.5 *Picketing which interferes with ingress or egress to and from public buildings, premises, streets and sidewalks.*

1. It shall be unlawful for any person, single or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any public premises, State property, county or municipal courthouses, city halls, office buildings, jails, or other public buildings or property owned by the State of Mississippi, or any county or municipal government located therein, or with the transaction of public business or administration of justice therein or thereon con-

ducted or so as to obstruct or unreasonably interfere with free use of public streets, sidewalks, or other public ways adjacent or contiguous thereto.

2. Any person guilty of violating this act shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than Five Hundred Dollars ($500.00), or imprisoned in jail not more than six (6) months, or both such fine and imprisonment.

3. This act shall not be construed to affect any suit or prosecution now pending in any court.

3. Robinson v. Coopwood, 292 F.Supp. 926 (N.D.Miss.1968), affirmed per curiam 415 F.2d 1377 (5 Cir. 1969).

seeking (1) leave to amend their counterclaim under Rule 15, F.R.Civ.P., in the present suit by adding the Mayor and Aldermen of Kilmichael as involuntary plaintiffs under Rule 19, F.R. Civ.P.; and (2) issuance of a temporary restraining order and a preliminary injunction against enforcement by Kilmichael officials of the state court injunction against defendant students.

On March 17 a further evidentiary hearing was held by this court on whether to convert the temporary restraining order concerning demonstrations near the school and elsewhere into a preliminary injunction to the same effect.[4] The Mayor and Aldermen were not then parties to the suit and there was no discussion of the state injunction at the March 17 hearing. After reviewing the evidence, this court issued a preliminary injunction against the students, to continue in effect until further order, incorporating the same restraints and proviso concerning protest activities at school and elsewhere in Montgomery County as the temporary restraining order of March 9.

On March 20 sixteen student marchers protesting school conditions were arrested by the County Sheriff in the Town of Kilmichael (population 514) for breach of the peace; the next day, upon motion of the town officials, and following an evidentiary hearing, the Chancery Court found the student defendants in contempt of its March 15 temporary injunction restricting protest activities in Kilmichael, and sentenced each defendant to pay a $50 fine and serve 5 days in county jail. Upon recommendation of the town officials, both fine and imprisonment were suspended by the Chancellor on condition that defendants refrain from further protest activity in violation of the state court injunction.

On April 2 we heard evidence on the student defendants' additional motions to add the town officials as involuntary plaintiffs in the federal court action begun by the Montgomery County Board of Education, and to enjoin enforcement of the state-court injunction. The Kilmichael officials resisted the students' motions on two alternative grounds: (1) defendant students' evidence failed to show the great and immediate danger of irreparable injury necessary to overcome the restrictions placed on the injunctive powers of federal district courts by the national policy of federal-state comity embodied in 28 U.S.C. § 2283 as interpreted by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its companion cases;[5] and (2) if this court has jurisdiction, we should find that the state injunction is constitutionally valid and justified by the evidence.

■ We hold first that the exception clause to § 2283 which allows federal courts to enjoin state proceedings "where necessary in aid of its jurisdiction; or to protect or effectuate its judgments" is controlling here. As stated, our prior injunctive orders of March 9 and March 17 undertook to regulate student protest activities both at schools and throughout Montgomery County. The evidence in this court is undisputed that protest activities in the Town of Kilmichael covered by the state injunction were directed at school board members, town officials and certain merchants for the primary purpose of effecting certain changes in school policies and programs. The evidence was equally clear that the protesters were entire-

---

4. At that hearing the court also decided certain matters of school discipline arising from earlier incidents which were before the court in this cause upon counterclaims for injunctive relief filed by certain defendant students against the school board. The next day this court enjoined the school board to readmit two students who were leaders of the protest movement.

5. § 2283. *Stay of State court proceedings*
   A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

ly students, assisted on a few occasions by their parents and others; in fact, the student defendants forbidden to picket in Kilmichael by the state injunction are essentially the same students whose protest activities at schools and elsewhere in Montgomery County were specifically regulated by this court following evidentiary hearings both before and after the ex parte state injunction issued. Although it does not appear from the record whether the Chancellor heard any evidence before issuing his injunction, the bill of complaint filed by town officials clearly reveals that the reason for the marches, picketing and demonstrations in Kilmichael was to protest school conditions and policies:

> "That on or about the 25 day of February, 1971 a disturbance occurred at one of the Montgomery County schools located adjacent to the Town of Kilmichael; that approximately one week after this disturbance certain students were expelled from school and that on or about March 1, 1971 students from this school began to picket, march, and demonstrate on the public streets and sidewalks of the complainant; * * *"

In light of the foregoing facts it is patent that the state injunction dealt with the precise issue already ruled upon by this court.

■ Although it might be argued that identity of parties and issues would present only a case of concurrent state and federal jurisdiction, it is clear that the rule of the *England*[6] line of cases permitting the anomalous situation of separate trials of the same issues in state and federal courts simultaneously does not apply here, where this court had plenary jurisdiction of the precise issue involved and had already entered its order resolving the issue before the state court injunction was sought. Thus this issue is part and parcel of our prior order and far more than a mere pendent state claim.[7] The fact that our order was for preliminary rather than final relief does not affect the § 2283 exception,[8] nor is the fact that the town was not a party to the prior federal action controlling, since town officials could not have been unaware of our prior order.

We may only conclude that the effect of the state injunction will be to undermine and interfere with the prior orders of this court and to limit our flexibility in dealing with the multiple and complex problems which almost inevitably arise in the wake of school desegregation.[9] The state injunction would seriously impede this court, sitting as a court of equity, from fashioning complete and appropriate relief in the cases now pending before it, which were already in advanced stages before the state injunction was sought. The need for complete, uniform equitable relief is particularly pressing in school desegregation cases, which would present such abundant opportunities for disruption and ill-feeling if rival courts were allowed to compete for jurisdiction of the varied issues.[10]

■ We further hold that even if this case did not fall within the above express exception clause to § 2283, we would be bound by prior case law to hold that federal injunctive relief is available in the present suit because of the exceptional circumstances indicating great and immediate danger of irreparable injury to the students' constitutional rights which are sufficient to override the national policy against federal intervention in state proceedings embodied in

6. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

7. Cf. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

8. Sperry Rand Corp. v. Rothlein, 288 F.2d 245 (2 Cir. 1961).

9. Atlantic Coast Line R. Co. v. Engineers, 398 U.S. 281 at 295, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Bland v. NLRB, 177 F.2d 555 (5 Cir. 1949); South Central Bell Tel. Co. v. Constant, 304 F.Supp. 732 (E.D.La.1969).

10. See, e. g., Thomason v. Cooper, 254 F.2d 808 (8 Cir. 1958).

§ 2283.[11] In applying the *Younger* rule, we are aware that the present case does not precisely fit the classic judicial exception to § 2283, where federal injunctions have been granted against state criminal prosecutions brought in bad faith under patently unconstitutional state statutes solely to prevent or inhibit the exercise of the right of free speech.[12] Here the students do not directly attack the state statute under which they were arrested,[13] nor even the criminal contempt citations placed upon them by the Chancellor. Instead they attack the civil sanction in the form of chancery injunction invoked against them by the Kilmichael officials, alleging that the ex parte action of the state court denied them procedural due process and was thus a patently unconstitutional state action which also deprived them of fundamental First Amendment rights of free speech and assembly. Thus this case is unlike recent suits in which this court held it was powerless to grant injunctive relief against pending state criminal proceedings under § 2283.[14] Nor is the case at bar strictly governed by pre-*Younger* decisions of the Fifth Circuit, such as *Sheridan* and *Robinson,* which also involved state criminal prosecutions, and where injunctive relief was allowed. As Justices Stewart and Harlan stated in their concurring opinion in *Younger:*

"The offense to state interests is likely to be less in a civil proceeding. A state's decision to classify conduct as criminal provides some indication of the importance it has ascribed to prompt and unencumbered enforcement of its law. By contrast, the State might not even be a party in a proceeding under a civil statute." (401 U.S. at 55, 91 S.Ct. at 757, 27 L.Ed.2d at 682, Fn. 3)

Beyond these slight hints, the Supreme Court has given little guidance to district courts for interpretation of § 2283 when the state proceedings sought to be enjoined is civil.

The starting point for all § 2283 cases in which exceptional circumstances appear must still be Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).[15] In that case Louisiana citizens involved in unpopular civil rights activities moved a federal district court to enjoin threatened state prosecutions for "subversive activities" under a state statute which plaintiffs alleged was patently unconstitutional and employed against them only for purposes of harassment and intimidation. The Supreme Court equated exceptional circumstances with irreparable injury where it appeared on special facts that substantial impairment of freedom of expression would occur in the absence of federal court intervention.

In subsequent cases following *Dombrowski,* courts have consistently required "unusual" or "exceptional" circumstances, such as bad faith prosecutions under clearly unconstitutional state statutes or court orders before federal injunctive relief would be granted against state proceedings. Essentially, the question whether there exist exceptional circumstances sufficient to remove a particular case from the bar of § 2283 is a factual one.

The two Fifth Circuit cases most directly in point factually with the present case, although pre-*Younger,* are

11. *Younger,* supra, 401 U.S. 37, 91 S.Ct. 746 at 27 L.Ed.2d 676.

12. *Younger,* supra; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965); Dawkins v. Green, 412 F.2d 644 (5 Cir. 1969); Sheridan v. Garrison, 415 F.2d 699 (5 Cir. 1969).

13. We note that the constitutionality of that statute, Miss.Code Ann. § 2318.5, Fn. 2 supra, has recently been upheld.

Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

14. Jeter v. Beard, DC 7075–K; Buffington v. Naugle, EC 7028–K.

15. The fountainhead for all federal injunctions against state criminal prosecutions is, of course, Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, but that case has long been seriously eroded by considerations of comity in the federal system.

*Coopwood,* supra, and *Machesky v. Bizzell,*[16] in which injunctive relief was eventually allowed, and both of which arose in this district. In *Coopwood* black citizens of Holly Springs, Mississippi had expressed their anguish and wrath over the assassination of Dr. Martin Luther King by numerous marches through the streets of that town accompanied by singing and vocal praying. There were many rumors and some evidence of violence and arson, which moved the City Council to adopt a special ordinance requiring marchers to give one-hour advance notice of any proposed protest march to the City Police and strictly limiting the numbers of marchers and manner of marching.[17] Following arrest and conviction under the Holly Springs ordinance, the protesters filed suit in federal district court seeking an injunction against its enforcement as patently violative of the First Amendment. After a thorough review of the facts surrounding the enactment of the ordinance and the arrests under it, we held that under the exceptional circumstances of the particular case § 2283 was inapplicable, declared the one-hour notice provision of the ordinance unconstitutional as applied and enjoined its further application, which decision was held "not reversible" by the Fifth Circuit per curiam, Fn. 3, supra. Thus, although the *Robinson* plaintiffs sought to enjoin state criminal prosecutions rather than a state injunction in a civil proceeding, the background facts and state action in question there were closely analogous to the case at bar.

*Machesky,* on the other hand, although based on somewhat different facts, presented the precise legal question now before us: does § 2283 bar a federal district court from enjoining enforcement of a state chancellor's injunction which severely restricts the right to march and picket for redress of grievances? In *Machesky,* black citizens of Greenwood, Mississippi had for some time conducted a boycott, including picketing, of white merchants of the town in an attempt to receive action on a list of demands for equal treatment. The merchants sought an injunction in state Chancery Court against picketing and "observing" by members of the black "Greenwood movement" on the ground that it was an illegal conspiracy in restraint of trade under state law. The black leaders appeared in state court where evidence was presented by both sides as to the nature and extent of the protest activities, and following briefing and argument the Chancellor enjoined all picketing in certain designated business areas of the city, basing his ruling upon extensive findings of fact and conclusions of law. The protest leaders sued the Chancellor along with the merchants in federal court under 42 U.S.C. § 1983 for declaratory and injunctive relief against the state injunction as violative of their rights to free speech and assembly. Confronted with the Chancellor's express findings, we dismissed the federal court action on the ground that no "exceptional circumstances" had been shown sufficient to overcome the federal-state comity doctrine of § 2283, particularly in view of the violence and intimidation which the Chancellor found to exist from the evidence before him and the broad measure of due process afforded protesters by the state court. In an opinion reviewing the prior case law from *Dombrowski* forward, the Fifth Circuit reversed, on the ground that the state court injunction was constitutionally overbroad and constitutional rights asserted by plaintiffs for full dissemination of ideas through free expression were public rights under the First Amendment of sufficient importance to

---

16. 288 F.Supp. 295 (N.D.Miss.1968), reversed 414 F.2d 283 (5 Cir. 1969).

17. The ordinance was modeled very closely on an injunction issued by this court at the request of civil rights marchers in Grenada, Mississippi, in Case #WC 6630, against a background of considerable violence, tumult and repression.

overcome the comity principles of § 2283.[18]

Several months after *Coopwood* and *Machesky* were decided by the Fifth Circuit, the Supreme Court announced its decision in Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), which is relied upon by town officials here. In that case a federal district judge in Florida had enjoined enforcement of a state injunction prohibiting labor picketing on the ground that the state injunction violated a federally-protected right to picket under the Railway Labor Act, 45 U.S.C. § 151 et seq. After the Fifth Circuit had affirmed the district court's action, the Supreme Court reversed, holding that § 2283 barred federal injunctions against pending state proceedings in the absence of an express exception to that statute by an Act of Congress or unless the injunction was issued in aid of the district court's jurisdiction or to effectuate its judgments. Although *Atlantic Coast Line* is akin to the case at bar because it was a civil suit in which a district court was held barred from enjoining a state injunction against picketing, it is not dispositive of the present case since *Atlantic* was a labor case not involving constitutional rights, but merely federal statutory claims. The Supreme Court there made no mention of *Dombrowski* or its progeny.

■ Surveying the intricate and not altogether consistent web of precedent laid down by the Supreme Court and the Fifth Circuit, we note that courts have considered various combinations of the following elements to constitute "exceptional circumstances": (1) vindication of First Amendment rights, particularly rights to free expression on public issues; (2) patently unconstitutional state statutes or court orders; (3) bad faith prosecutions designed to intimidate and coerce citizens not to exercise vital constitutional rights; (4) great and im-

mediate danger of irreparable injury; (5) the inability of complainants to adequately vindicate their rights by defending a single state-court prosecution; and finally, (6) the stage of the state proceeding. *Younger* makes clear, however, that a federal injunction may not issue "solely on the basis of a showing that the statute [or order] 'on its face' abridges First Amendment rights", but, in addition, there must be present extraordinary circumstances such as bad faith, harassment or their equivalent in terms of irreparable injury, as "factors necessary under equitable principles to justify federal intervention." [19]

In the case at bar the evidence at the three hearings which we have held concerning protest activities, as well as the evidence concerning incidents at Kilmichael High School resulting in disciplinary action which is intimately involved in the protest issue, revealed the following facts, which we find to constitute exceptional circumstances justifying federal injunctive relief against the state injunction. The entire protest activity in Kilmichael was the result of black students objecting to school conditions, including the wrongful suspension of two student body leaders, both girls and excellent students, who were subsequently reinstated upon order of this court. After we, by federal order, forbade the students from picketing in front of the Kilmichael High School, they transferred their protest activities into town where they conducted almost daily marches on the public streets in the downtown commercial section and also on a street upon which front the Kilmichael Hospital, an adjacent medical office occupied by Dr. Henson, an influential member of the school board, and, directly opposite, a drug store operated by the town's Mayor. The protest activities included the purposeful picketing of the stores of the merchants and the Mayor, and particularly the aforesaid medical office. The students engaging in the picketing and

18. See Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).

19. At 401 U.S. 53, 91 S.Ct. 755, 27 L.Ed. 2d 681.

marches did so without making unreasonable noise or creating undue disturbance; they carried small placards protesting their grievances, but these activities were carried out without violence, intimidation, coercion, or profanity. On one occasion while in front of the medical office the youthful picketers were subjected to a chemical spray released upon them by the physician-school board member and this incident incensed the black community. In certain instances, however, the picketers excessively crowded storefronts and by turning at store entrances caused double lines to form which impeded easy ingress and egress to and from certain stores, especially the Mayor's drug store. The protest activities extended to the hospital area only because of the nearby drug store of Mayor Howell and office of Dr. Henson. The orderly operation of the hospital was not interfered with or otherwise disturbed although the hospital administrator testified that certain elderly medicare patients reportedly were "upset" by the presence of the protesters in the street fronting the hospital.

Organized protest activities usually occurred at 10 a. m. and again in the afternoon. The number of protesters ranged from 15 to 200. Kilmichael has only one law enforcement officer, a town Marshal, who also reads the water meters and performs duties with the town's streets. The county Sheriff, and his deputies, are located at Winona, approximately 12 miles away.

At no time did the town make any arrests for traffic or other violations, but instead sought an ex parte injunction from the state court which enjoined the students, without a hearing, "from marching, picketing and demonstrating in the Town of Kilmichael until the further orders of the court" except in conformity with rigidly prescribed conditions. The injunction also prohibited all protest activity, no matter how quietly or unobtrusively conducted, within 100 yards of the hospital. Moreover, the sheriff's office arrested 15 black student marchers merely because they walked in front of a private residence where there had been a recent death. Thus we hold that not only have the protesters been deprived of their First Amendment rights peaceably to protest and assemble through an overbroad state injunction, but they have been subjected to multiple contempt citations without opportunity to have the injunction fashioned to provide a regulation reasonably necessary to balance the town's interests with the First Amendment rights of the student protesters. The evidence also shows not merely an unnecessary abridgement of such First Amendment rights, but that those persons who wish to exercise them lawfully are intimidated by the Sheriff's arrests and combined actions of the school board and town officials in subjecting them to successive injunctive orders. In the light of a factual background of harassment, the total effect of these court orders—our own taken with the state Chancellor's—appear to have effectually stifled both the First Amendment rights and desires of the black students peaceably to assemble and protest their school-related grievances to those in authority.

Under the rationale of *Younger*, as well as the valid remnant of *Machesky*, the foregoing unique and special circumstances are factors sufficient under equitable principles to create a case of grave and irreparable injury to important public rights which we are required to protect by striking down the unconstitutional state injunction and enjoining its enforcement.

In so ruling we are not unmindful of the town's legitimate need for reasonable regulation of the protest activities and of those persons who engage in them so that proper respect may be accorded to the rights of all citizens of Kilmichael. Balancing these interests will require modification and amplification of our preliminary injunction. This new order of bilateral effect is issued concurrently with the release of this opinion.

EXHIBIT A.

IN THE CHANCERY COURT OF MONTGOMERY COUNTY,
MISSISSIPPI IN VACATION, 1971

TOWN OF KILMICHAEL          COMPLAINANT

VERSUS          No. 9485

LEE WEST DANIELS, CHRISTINE SEALS,
TINA ALLEN, BARBARA TOWNSEND,
JIMMY LEE LOGGINS, and all other persons
acting in concert with them.

DEFENDANTS

### DECREE ORDERING TEMPORARY INJUNCTION

This cause came on for hearing this day, on prayer of complainant's Bill of Complaint for temporary injunction, without notice, and the Court having maturely considered all of the same, is of the opinion that the complainant should be granted a temporary injunction prohibiting the defendants from picketing, marching, and demonstrating except under the terms and conditions as hereinafter set out.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the defendants be and they are hereby enjoined from marching, picketing, and demonstrating in the Town of Kilmichael until the further orders of this Court except under the following terms and conditions:

*Marches*

a) Not more than one organized march shall be conducted or allowed to proceed at any one time in the said Town of Kilmichael.

b) Participants in marches shall obey all traffic signals and all traffic directions given by a police officer of the said Town or the peace officer which are not inconsistent with the rights of the defendants to peacefully march under the terms of this injunction.

c) Participants in marches shall form in groups of not more than ten (10) to each group and they shall maintain intervals between such groups of not less than twenty (20) feet. Individuals within such groups may form and walk in no greater numbers than two abreast, and intervals between the individuals shall be maintained at no less than one yard in any and all directions. Not more than one person for each ten marchers shall be permitted to walk outside of and abreast of such groups to serve as control personnel.

d) All marches shall be conducted as nearly as possible to the right hand edge of the public streets, with care being taken by all participants to produce minimum interference with normal traffic.

e) No singing, chanting, or other conduct calculated to disturb the peace of homes adjacent to the route of march shall be engaged in by participants in any said march which is conducted or permitted to proceed in or near a residential area after 7:30 o'clock p. m. and prior to 7:30 o'clock a. m.

f) No marches shall be conducted or permitted to proceed unless notice to the police department of the said Town of Kilmichael shall have been given by defendants or members of their class at least one hour prior to the beginning of the march. Such notice shall identify the point of origin, the point of destination, and the route to be taken and the approximate number of participants in the march. Such notice shall also apprise the police department whether upon arrival at the point of destination the

march and the related activity will be concluded or whether mass-meetings, assemblages, demonstrations or related activities are planned to occur at that place and time and if so, whether such activities will be conducted upon any public property.

*Picketing*

a) Participants in picketing activities shall form a single file column either along the curb of public sidewalks or along the storefronts so as to permit reasonably unimpeded ingress and egress to and from the premises along the streets upon which they picket. Such participants will not physically interfere with or obstruct the free movement of persons in and out of the places of business being picketed.

b) Participants in picketing activities upon sidewalks of approximately four feet to eight feet in width shall not carry any signs or physical objects which are greater than eighteen inches in width. When such activities are conducted upon sidewalks of approximately eight feet or more in width, the width of such signs or other physical objects shall not exceed twenty-four inches.

c) Participants in picketing activities shall maintain intervals between individuals of no less than three yards.

d) No picketing activities involving five or more participants shall be conducted or permitted to proceed unless notice thereof shall have been given to the police department of the said City at least one hour prior to the beginning of such activity. Such notice shall apprise the police department of the location of the picket line and the approximate number of participants. When less than five participants are engaged in picketing activities, no such notice shall be required.

*Other Demonstrations*

The participants in any mass-meetings, assemblages, or other demonstrations which are conducted upon public property other than the public ways of the said Town of Kilmichael shall take adequate measures to insure that no damage or destruction occurs to public property, including public monuments, ornamental plantings (and grass) upon public lawns.

It is further ordered, adjudged and decreed that the defendants be and they are hereby temporarily enjoined from marching, picketing, and demonstrating on Larmar and Vine Streets within 100 yards of the Kilmichael Hospital, until the further orders of this Court.

SO ORDERED, ADJUDGED AND DECREED on this the 15th day of March, 1971.

Kermit R. Cofer

CHANCELLOR